## COMM'RS OF CHASE COUNTY v. J. S. SHIPMAN.

HOMESTEAD CLAIMS, *on Government Lands, not Taxable.* Improvements made on government lands settled upon and occupied as a homestead under the act of congress of March 20, 1862, are not taxable before final proof of settlement and cultivation is made.

### *Error from Chase District Court.*

INJUNCTION brought against the *Board of Commissioners* and county treasurer, by *Shipman* and another, to enjoin the collection of taxes levied upon an alleged illegal assessment. The petition charges that the assessor of Diamond Creek township assessed to plaintiffs, *as personal property,* "a grist-mill, and saw-mill, mill-dam, and mill privilege, situate on the S.E.¼ of the N.W.¼ of section 26, township 19, range 7 east," and valued the same at $5,225, and that the tax levied on this assessment was $172.42. The petition also alleged that "the title to said S.E.¼ of N.W.¼ of said section 26 is in the United States, and not in the plaintiffs, and that one Mary Sloper has a homestead claim upon said land." The plaintiffs prayed that said taxes might be decreed illegal and void. The defendants demurred. The district court, at the May Term 1874, overruled the demurrer, and decreed a perpetual injunction. The defendants bring the case here on error.

*F. P. Cochran,* and *Ruggles & Sterry,* for plaintiffs in error:

The district court held that as the improvements of Shipman & Doolittle assessed and taxed were situated upon lands, the title to which was in the United States, that neither the land itself, nor any claim or possessory interest therein, or improvements thereon, could be legally assessed or taxed. Can this be the law? The question involves important and widespread interests. Vast amounts of property of great value, scattered all over the state, are held, occupied and enjoyed by settlers and occupants of homesteads, which, if this position

is tenable, wholly escape the burden of taxation. That which is property everywhere else, ceases to be property for all practical purposes of governmental use, if it is the law that time, labor and money may be expended upon, and extensive and valuable improvements attached to the soil that can neither be taxed as real estate nor in any other manner.

We do not claim that lands, taken under the "homestead act," while their title remains in the United States, can be taxed by the state, or by any governmental subdivision thereof. Such taxation would be illegal and void, not because of any lack of power so to do as a state, but because of the compact contained in the act of congress admitting the state into the Union, and the acceptance and ratification thereof by the territorial legislature. But we do hold that *the possession* of such lands, and *the improvements* erected thereon and attached thereto, are subject to taxation, and should be assessed with other property for that purpose. The general proposition, that they should be subject to taxation, has been sustained by legislative enactments, and the decisions of courts; and we apprehend there would be no doubt of the correctness of this position were it not for the language and reasoning used by this court in the latter part of its opinion in the case of *Parker v. Winsor*, 5 Kas., 362. If the court in that case intended to decide the broad proposition, that improvements on lands, the title to which is in the United States, could not be taxed by the state, we ask this court to review that decision. In that case the court first decides that the title to said lands, (part of the Kickapoo lands,) being in the government, the land could not be taxed; and then (so the court in the case below assumed,) decides that the improvements, being part of the real estate, cannot be taxed, because the realty cannot. But is not such reasoning somewhat delusive? The occupant has no title to the realty; but has he not a property in the improvements he has erected, and even in the possession he has acquired? Does the mere fact that a building is attached to land, make it realty too? Certainly not; for it has been held again and

again, that when one person erects a building upon the land of another, with that other's consent, it does not become a part of the realty. It belongs to the erector. Is it real estate? No; because he has no title to the land on which it stands. It is personal property. And in the case at bar this possession, and this class of improvements, cannot be considered real estate, nor has it been considered so by the legislature of this state, or by this court. If it is real estate, it belongs to the U. S. government; for it follows the title, and there is no dispute as to where that is.

That these improvements are not real estate, the legislature has declared; for by § 9, ch. 21, Gen. Stat., it has provided, that all contracts for the sale or purchase of such improvements shall be deemed valid, and may be sued upon as other contracts; and § 10 provides that a quitclaim deed and other conveyances of *improvements* on public lands, shall be as binding and effective between the parties. And this court, in the case of *Moore v. McIntosh*, 6 Kas., 39, recognized the validity of this legislation, and declared the sale of a homestead claim, with improvements thereon, a sufficient consideration for a promissory note given in payment thereof. *Hill v. Smith*, 1 Morris, 70; *Clark v. Shultz*, 4 Mo., 236. But it will be asked, as was done by this court in *Parker v. Winsor*, "Is it possible for the legislature to change real estate into personal property?" Is not the question too broadly stated? In one sense, may not the legislature in effect do that very thing? *Courts have* done so. Neither legislatures nor courts can change the physical characteristics of things or persons; but can they not change, modify and regulate their legal status? Courts have repeatedly decided that things attached to and which under the common law were *prima facie* real estate, shall be deemed and taken to be personal property; and legislatures have been equally quick and vigilant in the same direction, whenever it became necessary to determine and protect the rights of one class, and enforce the duties and obligations of another. The courts will be ready and vigilant to protect and sustain the title of the govern-

ment whenever the question is legitimately before it; but we suggest that that title is not in issue, and that as between the occupant who claims the title *to the property sought to be taxed*, and the state, the question, as to who has the title to the realty, has nothing to do with the case. Does it lie in his mouth to say, that it is not his property, for the purpose of taxation, when, for his individual benefit and profit, he exercises exclusive ownership over it, and at his pleasure sells and disposes of it? *Prima facie* all is real estate. But this is not uniformly so. The titles to the two may be, and very often are, separate and distinct, and when so, the improvements are to be regarded and treated as the personal property of the owner thereof. *Curtis v. Hoyt*, 19 Conn., 154; *Ashmun v. Williams*, 8 Pick., 402; *Doty v. Gorham*, 5 Pick., 487; *Aldrich v. Parsons*, 6 N. H., 555; *Wells v. Bannister*, 4 Mass., 513; *People v. Shearer*, 30 Cal., 645; 37 Cal., 54.

*C. M. Foster*, and *S. N. Wood*, for defendants in error:

The defendants in error are taxed for a grist-mill, saw-mill, mill-dam and mill privilege situate on certain land occupied under a homestead entry by another party. The title to the homestead is in the United States. What title the defendants in error may claim to the assessed property, is not stated in the petition. But whatever understanding may be had with the owner of the homestead, it is certain that the defendants have no title to said property which can make them the owners thereof in any sense known to the law. A mere license, or sufferance, by the one holding the homestead entry, would not convert a mill, mill-dam and mill privilege into personal property where the land is owned by the United States. If the occupant of the homestead had erected these mills, and made this dam, there is no doubt under the decisions of this court that the same could not be taxed as personal property: *Parker v. Winsor*, 5 Kas., 375. If the improvements could be called personal property, the occupier of a government homestead could be taxed in the same extent, in this indirect manner, as if the land itself were taxable.

That cannot be done indirectly which cannot be done directly. Whether the defendants in error could lawfully build the mills and erect the dam in question, by consent of the occupier of the homestead, is not a question in this case.

But whether the defendants in error have built these mills and erected this dam rightfully or wrongfully, the state has no jurisdiction over the property. It cannot sell the same and give the purchaser any title that can be asserted as against any one. To sell the same would be to give the purchaser a right of entry and possession to government land. This cannot be done. The California decisions referred to by counsel for plaintiffs in error have this distinction: mining claims are a species of property recognized by the laws of the United States, and enforcible in the courts: *Atchison v. Peterson*, 20 Wallace, 510; *Bary v. Gallagher*, id. 670. The possession of a homesteader could be protected by the courts, and any person who interfered with it would be liable to him as a trespasser, or perhaps might be restrained by injunction. But a mere licensee or trespasser on government land has no such ownership of his improvements as to make them personal property. A mill privilege is only another name for one of the elements of value in government land. It exists in the land itself, and cannot be separated from it, and of course cannot be treated as personal property as against homesteader or trespasser, unless the court holds that the land itself may be taxed under the pretext of its being personal property. If every element and attribute of the realty may be converted into personal property, and taxed as such, the prohibition in the act of admission of the state against interfering with the primary disposal of the soil is nugatory.

The opinion of the court was delivered by

VALENTINE, J.: The only question presented to us for our consideration and decision in this case, is, whether the improvements made on government land settled upon and occupied as a homestead under the act of congress of March

20th. 1862, (12 U. S. Stat. at Large, 392,) are taxable before final proof of settlement and cultivation of the land is made. We must answer this question in the negative. When this state was admitted into the Union it was agreed between the state and the United States that government lands should never be taxed by the state. (See Act of Admission, 12 U. S. Stat. at Large, 127, § 3, sub. 6; Joint Resolution of the Legislature of Kansas, Gen. Stat., 71.) The word "land" meant and means the land with all the improvements thereon. This is the legal signification of the term; it is the common-law definition thereof; and it is undoubtedly just what was meant when said Act of Admission and Joint Resolution were passed. There are a few exceptional cases where "improvements" on land are not considered a part thereof; but this is clearly not one of those cases. There is nothing to show that the state or United States at the time of our admission into the Union considered such improvements personal property. There is no act of congress passed at that time, or before or since, making them personal property. And there is no act of congress attempting to divest the government of the title to them while the government still owns the land, or to place the title anywhere else except in the government. But even if they were personal property, if they belonged to the United States they would not be taxable. (See Act of Admission.) There is no act of congress authorizing any person to remove them from the land. And there is no act of congress authorizing them to be taxed. We therefore think it beyond the power of the state to tax them. Calling them by a different name from what they in fact are, does not give the state any additional authority over them. (See *Parker v. Winsor*, 5 Kas., 374, 375.)

The judgment of the court below is affirmed.

All the Justices concurring.